IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT DeFEBBO,

       Plaintiff,

vs.                                      No. CIV 05-400 MCA/RHS

WALGREEN HASTINGS CO.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion to Dismiss* [Doc. No. 10] filed on June 1, 2005.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court finds that Plaintiff gave false or misleading deposition testimony regarding his medical history and that such false or misleading deposition testimony provides grounds for imposing sanctions.  The Court will not, however, impose the ultimate sanction of dismissal with prejudice at this time. Therefore, Defendant's motion to dismiss is denied, and in the alternative, the Court imposes the lesser sanction specified below.

## I.     BACKGROUND

On October 5, 2004, Plaintiff Robert DeFebbo filed a civil action in the Thirteenth Judicial District Court for the County of Sandoval, State of New Mexico, alleging that Defendant Walgreen Hastings Company is liable for personal injuries that Plaintiff sustained

in a slip-and-fall accident at one of Defendant's stores in Rio Rancho, New Mexico, on

November 3, 2003.  On March 31, 2005, Plaintiff filed an *Amended Complaint* in state court

to correct some clerical errors in his previous pleading.

Both the original *Complaint* and the *Amended Complaint* allege that Plaintiff suffered

the following damages as a result of Defendant's negligence:

> A)    He suffered a sprained left ankle, a twisted back, an injured right arm and shoulder, and injured right knee.

> B)    He has experienced great physical and mental pain and suffering, which still continues and will exist for an indefinite period of time into the future.

> C)    The treatment of his injuries necessitated expenses for physical therapy, treatment by physicians and nurses, and drugs and medicine and related paramedical expenses.

[Att. to Doc. No. 1.]

After Defendant took Plaintiff's deposition on March 28, 2005, Defendant ascertained

that Plaintiff was claiming damages in an amount sufficient to meet the $75,000 amount-in-

controversy requirement for federal diversity jurisdiction under 28 U.S.C. § 1332.  Defendant

subsequently removed the action to the United States District Court for the District of New

Mexico on April 8, 2005.  [Doc. No. 1.]  Plaintiff did not object to the timing of the removal

within the thirty-day period specified in 28 U.S.C. § 1447(c).

On June 1, 2005, Defendant moved to dismiss this action with prejudice on the

grounds that Plaintiff gave false or misleading deposition testimony regarding his medical

history.   Defendant's motion identifies the following portions of Plaintiff's deposition testimony as false or misleading.

First, in response to a general question about any pre-existing medical conditions at the time of his fall in Defendant's store, Plaintiff testified that he had "high blood pressure, diabetes, high cholesterol, sinusitis.  I think that's it." [DeFebbo Dep. at 15.]  When asked whether he had "any other falls" before his fall in Defendant's store, Plaintiff replied: "Not that I can recall." [De Febbo Dep. at 15.]

Defendant contends that these statements are inaccurate because Plaintiff's medical records report an incident in September 1997 when Plaintiff's "feet flew up and he landed flat on his back.  Now w/bad low back pain that interferes w/sleep.  Laid on ground for 20 minutes til he felt he could get up.  Come in for x-ray  at al." [Ex. B to Doc. No. 10, Confidential File Room Summary of Telephone Contact dated 9/15/97.]  Defendant also contends that Plaintiff failed to disclose a number of other pre-existing medical problems that are highly relevant to this litigation, as described in further detail below.

When asked about the injury to his right arm alleged in the *Complaint*, Plaintiff admitted to having prior problems with pain in his right arm, but he indicated that such problems merely involved "arthritis or something like that.  Nothing major." [DeFebbo Dep. at 17.]   When asked whether anyone told him that it was arthritis, Plaintiff replied: "I am going to say no, because I wasn't treated for it, so I can't remember." [DeFebbo Dep. at 17.] Defense counsel then asked: "And so as far as you can recall, you had no injury to your right arm prior to your fall at Walgreens?" Plaintiff answered "No." [DeFebbo Dep. at 17-18.]

Plaintiff's deposition testimony concerning his right arm was inaccurate because his medical records dating from 1993 document injuries and complaints of pain in Plaintiff's right elbow that resulted in a diagnosis of "epicondylitis" and required treatment in the form of physical therapy and a brace.  [Ex. B to Doc. No. 10, Consultation Sheet dated 7/28/93; Progress Notes dated 8/2/93,10/3/95, 10/16/95, and 12/11/95.]  Plaintiff's medical records also reveal that Plaintiff reported falling on his hand in late 1995.  [Ex. B to Doc. No. 10, Progress Notes dated 12/11/95.]

Turning to the injury to his right knee alleged in Plaintiff's *Complaint*, Plaintiff admitted having surgery on that knee in 1971 but denied having any problems with his right knee during the period after his surgery and before his fall at Defendant's store.  [DeFebbo Dep. at 19.]  Plaintiff's answer to this question was not accurate because his medical records reveal that Plaintiff made complaints about pain and locking in his right knee in 1998.  [Ex. B to Doc. No. 10, Confidential File Room Summary of notes dated 6/24/98.]

At his deposition, defense counsel also questioned Plaintiff about the injury to his left ankle alleged in Plaintiff's *Complaint*.  When asked if he ever had any problems with his left ankle prior to his fall at Defendant's store, Plaintiff replied:  "I'm trying to recall.  I don't remember."  Defense counsel then asked:  "Do you remember any specific injuries to your ankles prior to your fall at Walgreens?"  Plaintiff answered "No."  [DeFebbo Dep. at 16.]

By answering in this manner, Plaintiff failed to disclose an extensive medical history of chronic problems with his left ankle that date back as far as 1968.  In particular, Defendant points to medical records which show that Plaintiff reported pain in his left ankle to a

physician in 1993 and later admitted in 1994 that his left ankle pain had been present for years.  [Ex. B to Doc. No. 10, Doctor's Note dated 12/28/93; Medical Certificate dated 1/13/94; Radiology Consultation Sheets dated 1/20/94.]  Plaintiff's medical records also show that he was told his left ankle was a candidate for surgery in 1998 and that x-rays of the ankle taken in 2001 showed "post-traumatic degenerative arthritis with marginal osteophyte formation." [Ex. B to Doc. No. 10; Confidential File Room Summary of Progress Notes dated 6/24/98; Rheumatologic History dated 1/15/2001; Clinic Notes dated 1/15/2001, 10/18/2001, and 2/26/2001 ]  Medical records dated approximately one month prior to Plaintiff's fall at Defendant's store report that a radiological study of his left foot revealed a "small osseous fragment projects along of the anterior ankle joint on the lateral view" and "mild moderate midfoot osteoarthropathy, predominantly talonavicular joint." [Ex. B to Doc. No. 10, Confidential File Room Summary of Progress Notes dated 10/07/2003.]

Finally, Defendant contends that Plaintiff also gave false or misleading deposition testimony regarding the injury to his back alleged in his *Complaint*.  On this topic, Plaintiff admitted that prior to his fall at Defendant's store, he had "what you would call nuisance pain for quite a few times." [DeFebbo Dep. at 16.]  When asked to describe such "nuisance pain," Plaintiff testified that "sometimes it will bother you and then its gone in an hour, and then it won't bother you for two or three days, and then it bothers you again and you take something.  It wasn't disabling." [DeFebbo Dep. at 16-17.]  When asked if he had ever seen a doctor for this "nuisance pain," Plaintiff replied:  "No.  I've never treated for it." [DeFebbo Dep. at 17.]

According to Plaintiff's deposition testimony, Dr. Hinds was the first doctor he saw after his fall at Defendant's store, and his first visit to Dr. Hinds occurred at the "Presbyterian pain clinic" approximately thirty days after his fall. [DeFebbo Dep. at 26.] When asked to explain who referred him to the Presbyterian pain clinic for that visit, Plaintiff testified that: "I think I just looked it up in the phone book and it said pain clinic. I need to go there." [DeFebbo Dep. at 26.] Defense counsel then asked Plaintiff whether he had seen Dr. Hinds before then, and Plaintiff replied: "No."

Plaintiff's deposition testimony concerning the treatment of his back and his visit to Dr. Hinds is not accurate because his medical records show that he had previously seen Dr. Hinds for back pain on April 2, 2003, and again two weeks before his fall at Defendant's store. [Ex. B to Doc. No. 10, Medical Pain Evaluation dated 04/02/2003; Procedure Note dated 04/07/2003; Progress Note dated 10/16/2003.] Plaintiff had been complaining of and receiving medical treatment for back pain for several years, and this treatment included spinal injections administered by Dr. Hinds in the months preceding his fall at Defendant's store. [Ex. B to Doc. No. 10, Procedure Note dated 04/07/2003; Confidential File Room Summary of Progress Notes dated 10/13/2000, 04/05/2001, 09/05/2001, and 10/24/2001; Rheumatologic History dated 1/15/2001; Clinic Notes dated 1/15/2001, 10/18/2001, 03/05/2003; Radiology Report dated 1/25/01.] Additionally, Plaintiff sought and was awarded a "20% disability based on lumbar spinal stenosis" as of January 2002. [Ex. B to Doc. No. 10, Clinic Note Dated 1/15/2002.] Plaintiff's medical records also show that his first doctor's visit after the fall occurred on November 7, 2003--just four days later--and that

he had "no new problems to report" at that time.  [Ex. B to Doc. No. 10, Confidential File Room Summary of Progress Note dated 11/07/2003.]

After Defendant filed its *Motion to Dismiss* identifying the above discrepancies between Plaintiff's deposition testimony and his medical records, Plaintiff filed an affidavit in which he attempts to provide an explanation for these discrepancies.  [Ex. 1 to Doc. No. 14.]  Plaintiff's affidavit does not dispute the accuracy of Defendant's account of his medical history prior to his fall as reflected in the medical records attached to Defendant's motion.

Instead, Plaintiff attributes many of the discrepancies between his deposition testimony and his medical records to a lapse in memory.  In particular, Plaintiff notes that in his deposition testimony regarding his prior falls and his prior problems with his right arm and left ankle, he answered defense counsel's questions by stating that he "could not remember" or words to that effect.  [DeFebbo Aff. at ¶¶ 2, 3, 5.]  As for the error in his deposition testimony regarding the timing of his visits to Dr. Hinds regarding his back pain, Plaintiff's affidavit states that he "became confused" about what dates he had seen Dr. Hinds because, at the time of his deposition, he "did not recall" seeing Dr. Hinds prior to his fall and "did not remember" which of his doctors had referred him to Dr. Hinds.  [DeFebbo Aff. ¶ 7.]

With regard to the prior problems with his back, Plaintiff's affidavit attributes the discrepancies between his medical records and his deposition testimony to a matter of semantics.  According to Plaintiff's affidavit, the "nuisance pain" that he referenced in his deposition testimony is the same as the "lumbar spinal stenosis" identified in his medical

records, and his deposition testimony states that was "never treated" for the "nuisance pain" in his back because Plaintiff does "not consider taking pills as treatment."  Rather, Plaintiff considers "treatment as surgery."  [DeFebbo Aff. at ¶ 6.]  Plaintiff asserts that when the words "nuisance pain" and "treatment" are understood in the manner noted in his affidavit, then his earlier deposition testimony on these subjects is not inaccurate.

Plaintiff further contends that his deposition testimony denying prior problems with his right knee is not inaccurate when placed in the proper context.  In this regard, Plaintiff's affidavit asserts that his denial of prior problems with his right knee must be viewed in light of his earlier disclosure that "[t]his knee was operated on in 1971."  [DeFebbo Aff. ¶ 4.] Plaintiff also explains that when asked at his deposition about the injury to his right knee, he understood the question in a general sense that included all prior problems with this knee, not just those attributed to his fall at Defendant's store.  [Doc. No. 14, at 2.]

## II.   **ANALYSIS**

The Tenth Circuit has made "it clear that a district judge may dismiss an action for discovery violations" in certain circumstances.  Archibeque v. Atchison, Topeka and Santa Fe Rwy. Co., 70 F.3d 1172, 1174 (10th Cir. 1995).  In this circuit, perjuring oneself by intentionally giving false deposition testimony is among the particularly egregious discovery violations for which district courts possess the inherent power to impose the sanction of dismissal.  See Chavez v. City of Albuquerque, 402 F.3d 1039, 1043-44 (10th Cir. 2005). Other circuits have similarly concluded that "striking a party's pleadings under Rule 37 is within the range of appropriate sanctions when a party demonstrates a 'blatant disregard of

the Court's orders and the discovery rules,' engaging in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case." <u>Chrysler Corp. v. Carey</u>, 186 F.3d 1016, 1022 (8th Cir. 1999); <u>accord</u> <u>Monsanto v. Ralph</u>, 382 F.3d 1374, 1380-81 (Fed. Cir. 2004).

Before imposing such an extraordinary sanction, however, the Court must weigh and consider a number of factors, including: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process;  (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance;  and (5) the efficacy of lesser sanctions." <u>Ehrenhaus v. Reynolds</u>, 965 F.2d 916, 921 (10th Cir.1992) (internal citations and quotation marks omitted).  Because dismissal is such a harsh sanction, it is appropriate only in cases of "'willfulness, bad faith, or [some] fault of'" the party whose claims are dismissed. <u>Archibeque</u>, 70 F.3d at 1174 (quoting <u>National Hockey League v. Metropolitan Hockey Club, Inc.</u>, 427 U.S. 639, 640 (1976)).

In this case, I find that Plaintiff's deposition testimony about his prior medical problems is false or misleading, and that this false or misleading deposition testimony evinces a level of culpability that warrants the imposition of sanctions.  I find that Plaintiff's attempt to attribute the inaccuracies in his deposition testimony to a mere lapse in memory or a semantic misunderstanding is disingenuous and implausible.  Plaintiff's medical records reflect that the past medical problems he claims he could not remember at his deposition are so extensive that they would not be easily forgotten by a reasonable person in any

circumstance.  See Chrysler Corp., 186 F.3d at 1021-22.  In addition, Plaintiff's medical records show that he was able to recall the details of his past medical history on a consistent basis when speaking with his doctors.  At his deposition, he also was able to recall extensive details about his medical treatment *after* his fall at Defendant's store.  [DeFebbo Dep. at 24-25, 26-27.]  Thus, Plaintiff used his memory in a selective manner at his deposition:  he remembered medical information that bolsters his claim against Defendant but conveniently failed to recall information that was obviously relevant and helpful to Defendant.

Based on such selective use of his memory, Plaintiff indicated in some portions of his deposition testimony that he could not remember certain aspects of his medical history.  These portions of his deposition testimony are not false in the literal sense because Plaintiff only indicated that he could not remember his past medical problems and did not expressly deny their existence.  Nevertheless, I find that Plaintiff's deposition testimony to the effect that he could not remember prior medical problems relating to his right arm and his left ankle were misleading and evasive when considered in the context of the answers he provided to other questions.

More importantly, there are other portions of Plaintiff's deposition testimony in which he flatly and categorically denied prior medical problems that are extensively documented in his medical records.  In particular, Plaintiff flatly denied having any problems with his right knee during the period between his surgery in 1971 and his fall in Defendant's store in 2003.  Plaintiff also flatly denied ever seeing a doctor or being treated for what he described as the "nuisance pain" in his back.  In this regard, Plaintiff not only denied seeing Dr. Hinds

-10-

prior to his fall in Defendant's store; he denied *ever* seeing a doctor for his back pain prior to this fall, and he embellished this denial by inventing a story about finding the pain clinic where Dr. Hinds worked by looking it up in the phone book.  [DeFebbo Dep. at 17.]

I am not persuaded by Plaintiff's attempt to explain away his false deposition testimony by means of a subsequently prepared affidavit.  In other contexts, courts may disregard an affidavit that contradicts the affiant's own sworn deposition testimony when such an affidavit constitutes an attempt to create a "sham fact issue."  Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986); see also Darnell v. Target Stores, 16 F.3d 174, 177 (7th Cir. 1994) (concluding that parties cannot create material issues of fact by submitting affidavits that contradict their own deposition testimony).  Although motions for discovery sanctions are not governed by the same standard of review as motions for summary judgment, I view Plaintiff's affidavit with similar skepticism in this case.

Even if Plaintiff honestly asserts in his affidavit that he did not believe "taking pills" or "pain relievers such as Tylenol" constituted "treatment," the fact remains that Plaintiff saw several doctors regarding his prior back problems, and he received extensive medical diagnosis and treatment for these problems for many years before his fall at Defendant's store.  Such treatment involved much more than taking pills or pain relievers such as Tylenol. Rather, the medical treatment that Plaintiff received for his back problems included several prescription medications that Plaintiff could not have received without being seen by a physician, as well as a procedure involving spinal injections administered by a physician in the confines of a medical facility.  [Ex. B to Doc. No. 10, Procedure Note dated 04/07/2003.]

Further, all of the prior back problems documented in Plaintiff's medical records (including his "lumbar spinal stenosis") cannot be explained by attempting to place them under the category of the "nuisance pain" he described in his deposition testimony.  Although Plaintiff admitted to a history of such "nuisance pain" at his deposition, he also stated that this nuisance pain "wasn't disabling."  [DeFebbo Dep. at 16-17.]

Plaintiff's medical records, however, document that his "lumbar spinal stenosis" was so disabling that "[h]e was seen by physicians at the Kirtland medical facility and was awarded a '20% disability.'"  [Ex. B to Doc. No. 10, Clinic Note dated 01/15/2002.]  His lower back pain is reported as "increasing severe" in January 2001, and by October 2001 he had a "progressive weakness of his legs, presumed secondary to his spinal stenosis."  [Ex. B to Doc. No. 10, Clinic Notes dated 01/15/2001 and 10/18/2001.]  As a result of this condition, Plaintiff "had difficulty getting in and out of chairs and . . . request[ed] a power lift chair."  [Ex. B to Doc. No. 10, Clinic Note dated 10/18/2001.]  On March 5, 2003, "lower back pain" was reported as Plaintiff's "main problem," resulting in a referral to Dr. Hinds.  [Ex. B to Doc. No. 10, Clinic Note dated 03/05/2003.]  On April 2, 2003, Plaintiff's "low back pain" was again reported as "gradually increasing in severity," with the result that "when he walks to the grocery store he needs to support himself with a grocery cart."  [Ex. B to Doc. No. 10, Clinic Note dated 04/02/2003.]  These reports are inconsistent with mere "nuisance pain" that is not disabling.

In evaluating whether Plaintiff's false or misleading deposition testimony warrants the imposition of sanctions, I must also take into account that this testimony, as well as his

subsequent affidavit, were given under oath.  The Tenth Circuit has noted that:  "'Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth.  It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.'"  Chavez, 402 F.3d at 1039 (quoting Webb v. Texas, 409 U.S. 95, 97 n. * (1972)).  Similarly, defense counsel was not under any obligation to warn Plaintiff that counsel was in possession of his medical records, or other independent proof of his pre-existing medical conditions, at the time of Plaintiff's deposition. See United States v. Camporeale, 515 F.2d 184, 189 (2d Cir. 1975).  "[H]aving taken an oath to testify truthfully, [Plaintiff] was obligated to do so with respect to all matters testified to by him, regardless whether . . . [Defendant] had independent proof with respect to the subject matter."  Id.

Plaintiff contends that even if some portions of his deposition testimony were inaccurate, Defendant was not unfairly prejudiced by such inaccuracies because Defendant independently obtained the relevant information through discovery of his medical records. I find no merit to this contention.

The Rules of Civil Procedure are premised on the notion that parties should be able to rely on honest, accurate, and timely responses to discovery requests, including an opposing party's deposition testimony, without resorting to judicial intervention.  See Dotson v. Bravo, 202 F.R.D. 559, 570 (N.D. Ill. 2001), aff'd, 321 F.3d 663 (7th Cir. 2003). Accordingly, the rules do not contemplate that parties should be required to spend an inordinate amount of time impeaching a deponent through cross-examination regarding each

-13-

page of an extensive set of medical records, or seeking an order compelling an accurate response to the information provided therein, in order to overcome the deponent's evasion tactics and ascertain the truth.

Such "'delay and evasion are added burdens on litigation, causing waste of judicial and legal time, are unfair to the litigants and offend the administration of justice.'" Monsanto, 382 F.3d at 1381 (quoting Denton v. Mr. Swiss of Missouri, Inc., 564 F.2d 236, 241 (8th Cir.1977)). Especially when such evasion tactics include making false or misleading statements under oath, "they are a direct affront to the court," Chrysler Corp., 186 F.3d at 1021, because they "put the factfinder and parties 'to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross examination, by extraneous investigation or other collateral means.'" Dotson, 202 F.R.D. at 571 (quoting ABF Freight System, Inc. v. N.L.R.B., 510 U.S. 317, 323 (1994)).

For these reasons, I determine that Plaintiff's false or misleading deposition testimony concerning his medical history caused unfair prejudice to Defendant and substantially interfered with the judicial process.  I further determine that Plaintiff bears a high degree of culpability for the errors in his deposition testimony and that the content of the oath administered at the beginning of his deposition adequately warned him of the consequences of his noncompliance with that oath.

I next consider the efficacy of sanctions other than dismissal.  See Ehrenhaus, 965 F.2d at 921.  Although the Court possesses the inherent authority to impose sanctions for giving false or misleading deposition testimony and need not rely entirely on the express

provisions of the Rules of Civil Procedure, <u>see</u> <u>Chavez</u>, 402 F.3d at 1043-44, in this instance I find that the range of sanctions listed in Fed. R. Civ. P. 37 provides an appropriate framework for my analysis.  See <u>Dotson v. Bravo</u>, 321 F.3d 663, 667 (7th Cir. 2003).

Under this rule, a discovery response that is false, misleading, evasive, or incomplete is generally treated as a failure to disclose.  See Fed. R. Civ. P. 37(a)(3), 37(c); <u>Dotson</u>, 321 F.3d at 667.  Sanctions for failure to disclose information in discovery include prohibiting the violator from using "as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Fed. R. Civ. P. 37(c)(1).

In addition, such a failure to disclose may subject the violator to sanctions under Fed. R. Civ. P. 37(b)(2), which include, in relevant part:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

> . . .

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

See Fed. R. Civ. P. 37(c), (d) (incorporating sanctions provided in Fed. R. Civ. P. 37(b)(2)(A), (B), and (C)).  "'[A] formal written order to comply with discovery requests is not required [as a prerequisite to the imposition of sanctions] under Rule 37(b),'" especially when, as here, the oath administered at the beginning of a deposition functions as the equivalent of such an order.  Dotson, 202 F.R.D. at 570 (quoting Halas v. Consumer Services, Inc., 16 F.3d 161, 164 (7th Cir.1994)).

At this juncture, I conclude that the most appropriate sanction for Plaintiff's false or misleading deposition testimony is to prohibit Plaintiff from appearing as a witness or using his own testimony as evidence at a trial, at a hearing, or on a dispositive motion, for the purpose of proving the elements of causation or damages that are essential to his claim against Defendant.  Rather, Plaintiff will be required to prove these elements of his claim solely through the use of testimony by medical experts that is relevant, reliable, and admissible under the Federal Rules of Evidence and Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579 (1993).

I conclude that prohibiting Plaintiff from appearing as a witness or testifying for these purposes fulfills the need to "'penalize those whose conduct may be deemed to warrant such a sanction . . . [and] deter those who might be tempted to such conduct in the absence of such a deterrent.'"  Chrysler Corp., 186 F.3d at 1022 (quoting Nat'l Hockey League, 427 U.S. at 643).  At the same time, the prohibition that I impose here recognizes the "strong policy in favor of deciding a case on its merits" by allowing Plaintiff to prove that he has a meritorious

claim by other, alternative means that are less subject to the abuses for which he is being sanctioned.  Id. at 1020.

If Plaintiff is unable to prove the elements of causation or damages through relevant, reliable, and admissible testimony from a medical expert, then Defendant will be entitled to judgment as a matter of law.  I also caution Plaintiff that any further discovery violations or dishonesty on his part may result in the imposition of additional sanctions, including dismissal of this action with prejudice.  Finally, the sanction that I impose on Plaintiff is not to be construed as limiting Defendant's right to pursue further discovery regarding Plaintiff's claims through any of the methods listed in Fed. R. Civ. P. 26(a)(5), or to present admissible evidence at trial, at a hearing, or on any motion.

## III.   <u>CONCLUSION</u>

After carefully considering the relevant law and applying each of the <u>Ehrenhaus</u> factors to the facts of this case, I conclude that the ultimate sanction of dismissal is not warranted at this time.  I will, however impose the lesser sanction of prohibiting Plaintiff from appearing as a witness or using his own testimony as evidence at trial, at a hearing, or on a dispositive motion, for the purpose of proving the elements of causation or damages that are essential to his claim against Defendant.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion to Dismiss* [Doc. No. 10] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is prohibited from appearing as a witness or using his own testimony as evidence at trial, at a hearing, or on a dispositive motion, for the purpose of proving the elements of causation or damages that are essential to his claim against Defendant.

**SO ORDERED** this 25th day of August, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**